IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| BLUE RIBBON STAFFING LLC, | § § § | |
| *Plaintiff*, | § § | 5-20-CV-00686-RBF |
| vs. | § § § | |
| FLATIRON CONSTRUCTORS, INC. *ET AL*. | § § § § | |
| *Defendants*. | § § § | |

**ORDER**

Before the Court is Defendants' Motion to Dismiss. *See* Dkt. No. 19. The Court has diversity jurisdiction over this action to recover on a public-works bond under Texas's McGregor Act. *See* 28 U.S.C. § 1332. Authority to enter this Order stems from 28 U.S.C. § 636(c), as all parties have consented to U.S. Magistrate Judge jurisdiction. *See* Dkt. Nos. 8-9, 12.

As discussed further below, Defendants' Motion, Dkt. No. 19, is **GRANTED**. McGregor Act claims such as those lodged here must be properly perfected as a condition precedent to any recovery. Because Plaintiff Blue Ribbon Staffing LLC failed to properly perfect its claims as a matter of law, the claims to recover on the payment bond for work performed in July through October of 2019 are **DISMISSED**.

**Factual and Procedural Background**

Defendant Flatiron Constructors, Inc. served as a general or prime contractor (also called the primary contractor) on a public-works construction project to improve Loop 1604 in Bexar County, Texas. *See* Amend. Compl. (Dkt. No. 18) at 2. In accordance with Texas's McGregor Act, Tex. Gov't Code § 2253, Flatiron posted a payment bond for the project, listing the additional

1

Defendants as bond sureties. *See id.* at 3. Flatiron is therefore the bond principal as well as the prime contractor. Flatiron subcontracted a portion of the project's concrete work to non-party 2J Resources LLC. *See id.* 2J Resources, in turn, contracted with Plaintiff Blue Ribbon to provide labor from July through October 2019. *See id.*; Ex. 2. 2J Resources, however, allegedly never paid Blue Ribbon for the labor Blue Ribbon provided. *See id.* at 3. This case involves Blue Ribbon's efforts to recover on the payment bond from the bond sureties and principal.

On April 23, 2020, Blue Ribbon sued Defendants in Bexar County state court. *See* Dkt. No. 1-1 at 3-7. Blue Ribbon seeks $123,704.90, plus interest, and attorneys' fees pursuant to Chapter 38 of the Texas Civil Practice & Remedies Code. *See* Amend. Compl. (Dkt. No. 18). Blue Ribbon claims in its live complaint that it provided certain statutorily required "notices to Flatiron Constructors, Inc. and to the lead surety as contained in the attached Exhibit 2, which contains all of the unpaid invoices, and has complied with the statute for notice to the general or prime contractor and its sureties." *Id.* at 3.

Defendants timely removed the case based on diversity jurisdiction. *See* Dkt. No. 1.[1] Defendants now move to dismiss Blue Ribbon's claims for failure to satisfy the McGregor Act's notice requirements. *See* Dkt. No. 19. Additionally, Defendants argue Blue Ribbon isn't entitled to attorney fees under Chapter 38 of the Texas Civil Practice & Remedies Code. *See id.* Before taking up Defendants' Motion to Dismiss, the Court provided Blue Ribbon an opportunity to amend its live pleadings to conform to federal pleading standards and respond to Defendants' arguments for dismissal based on the asserted inadequacy of notice provided by Blue Ribbon in connection with its claims. *See* Dkt. Nos. 17 & 18.

---

[1] Defendants subsequently amended their notice of removal to adequately allege the parties' citizenship. *See* Dkt. No. 5.

**Analysis**

As evident on the face of Blue Ribbon's live pleadings and the uncontested matters submitted by Blue Ribbon attached to its Amended Complaint, Blue Ribbon failed as a matter of law to timely provide the statutorily required notice of its claims for work performed in July, August, and September 2019. That notice is a condition precedent to the perfection of a cause of action under the McGregor Act. Accordingly, those unperfected claims must be dismissed.

The claim involving October 2019 work raises the novel issue of whether email notice under the McGregor Act could satisfy the Act's notice requirements. After a careful review of the McGregor Act's text, Fifth Circuit precedent, and relevant Texas Supreme Court decisions, the Court's *Erie* guess is that the Texas Supreme Court would conclude that the email notice provided by Blue Ribbon doesn't comply with the McGregor Act under a plain-text reading of its provisions. Blue Ribbon's claims for October 2019 work must therefore also be dismissed.

The attorney's fees issue need not be addressed, as the McGregor Act provided the only basis for relief asserted by Blue Ribbon.

  A. *The McGregor Act and Its Notice Requirements*.

The parties agree that Texas's McGregor Act governs this action and provides the sole cause of action through which Blue Ribbon seeks relief. Under the Act, as it pertains to this case, "[a] governmental entity that enters into a public works contract with a general contractor must . . . require the [prime] contractor to execute performance and payment bonds before work begins." *Capitol Indem. Corp. v. Kirby Rest. Equip. & Chem. Supply Co.*, 170 S.W.3d 144, 147 (Tex. App.—San Antonio 2005, pet. denied) (citing Tex. Gov't Code § 2253.021). The parties

further agree that Flatiron executed a payment bond and that the other Defendants are sureties on the bond.

The McGregor Act, in addition to requiring a bond in circumstances such as these, also provides a cause of action for a "payment bond beneficiary who has provided public work . . . under a public work contract" to "sue the principal or surety, jointly or severally, on the payment bond if the claim is not paid before the 61st day after the date the notice for the claim is mailed." Tex. Gov't Code § 2253.073. But under the Act, as Blue Ribbon concedes, "[a] payment bond claimant's claim can fail if the claimant fails to provide timely or adequate notice" of the claim and, as a result, does not properly perfect the claim. Resp. at ¶ 9; *see Capitol Indem.*,170 S.W.3d at 147 (citing Tex. Gov't Code § 2253.073 and noting, "[i]n order to bring suit against the surety on a payment bond, [however,] the beneficiary must first properly perfect the claim"). Indeed, providing the required notice is a condition precedent to perfecting a claim under the Act. *See In re Contractor Tech., Ltd.*, 529 F.3d 313, 318-20 (5th Cir. 2008). In this regard, "[t]he statute is intended to provide a simple and direct method of giving notice and perfecting such claims." *Capitol Indem.*, 170 S.W.3d at 147. The details of the timing and substance of the required notice vary depending on the relationship between the bond beneficiary and the prime contractor.

       1.     *Notice from a beneficiary in direct privity with the prime contractor.*

For a payment-bond beneficiary who directly contracted with the prime contractor, the beneficiary "must mail to the prime contractor and surety written notice of the claim" within a three-month deadline, as provided below:

> NOTICE REQUIRED FOR CLAIM FOR PAYMENT FOR LABOR OR MATERIAL.
>
> (a) To recover in a suit under Section 2253.073 on a payment bond for a claim for payment for public work labor performed or public work material delivered, a

payment bond beneficiary *must mail* to the prime contractor and the surety written notice of the claim.

(b) The notice *must be mailed* on or before the 15th day of the third month after each month in which any of the claimed labor was performed or any of the claimed material was delivered.

(c) The notice *must* be accompanied by a sworn statement of account that states *in substance*:

> (1)   the amount claimed is just and correct; and
>
> (2)   all just and lawful offsets, payments, and credits known to the affiant have been allowed.
>
> . . . .

Tex. Gov't Code § 2253.041(a)-(c) (emphasis added). As the statute makes clear, the notice must be mailed on or before the 15th day of the *third* month after each month in which any of the claimed labor was performed, and it must be accompanied by a "sworn statement of account." Tex. Gov't Code § 2253.041(c); *Capitol Indem.*, 170 S.W.3d at 147. Notably, the required sworn statement of account need only provide certain details "in substance." Tex. Gov't Code § 2253.041(c).

> 2.   *Notice from a beneficiary not in direct privity with the prime contractor.*

But for a subcontractor like Blue Ribbon lacking a direct contractual relationship with the prime contractor, the requirements are more exacting in terms of timing and more relaxed in other ways. In such circumstances and as pertinent to this case, the Act provides as follows:

> ADDITIONAL NOTICE REQUIRED FOR PAYMENT BOND BENEFICIARY WITHOUT DIRECT CONTRACTUAL RELATIONSHIP WITH PRIME CONTRACTOR.
>
> (a) To recover in a suit under Section 2253.073 on a payment bond, a payment bond beneficiary who does not have a direct contractual relationship with the prime contractor for public work labor or material *must mail* notice as required by this section.
>
> . . . .

> (c) The payment bond beneficiary *must mail* to the prime contractor written notice of a claim for any unpaid public work labor performed or public work material delivered. The notice must be mailed on or before the 15th day of the second month after each month in which the labor was performed or the material was delivered. A copy of the statement sent to a subcontractor is sufficient as notice under this subsection.

Tex. Gov't Code § 2253.047(a), (c) (emphasis added). Thus, the bond beneficiary without a direct relationship to the prime contractor "*must mail*" notice to the prime contractor "before the 15th day of the *second* month after each month in which the labor was performed." Tex. Gov't Code § 2253.047(c) (emphasis added). Offsetting somewhat the shorter timeline for providing notice, § 2253.047(c) provides that "[a] copy of the statement sent to a subcontractor is sufficient as notice under this subsection." No sworn statement of account, in other words, is required. *See id*.

        3.      *Requirements for mailing the required notice.*

Finally, a separate section of the Act addresses the topic of "Mailing Notice," and it provides—as follows—several mandatory features for mailing the required notice along with certain options as well:

> MAILING NOTICE.
>
> (a) A notice required by this subchapter to be mailed *must be* sent by *certified or registered mail*.
>
> (b) A notice required by this subchapter to be mailed to a prime contractor *must be* addressed to the prime contractor at the contractor's residence or last known business address.
>
> (c) A person satisfies the requirements of this subchapter relating to providing notice to the surety if the person mails the notice *by certified or registered mail* to the surety:
>
> > (1) at the address stated on the bond or on an attachment to the bond;
> >
> > (2) at the address on file with the Texas Department of Insurance; or

>    (3)  at any other address allowed by law.

Tex. Gov't Code § 2253.048 (emphasis added).

      B.      *Claims for July and August 2019 Work.*

Blue Ribbon's live pleading seeks recovery for $123,704.90 in unpaid sums for labor provided, based on attached invoices ranging from July 2019 through October 2019. *See* Dkt. No. 18 at 4; Ex. 2 to Dkt. No. 18 (invoices). The invoices attached to the Amended Complaint are properly before the Court in this motion-to-dismiss posture. *See* Fed. R. Civ. P. 12(b)(6); *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

Blue Ribbon has abandoned any defense against dismissal of its claims for work performed in July and August of 2019. Defendant's Motion to Dismiss argues, a lack of timely, adequate notice as a matter of law for all claims for work performed from July 2019 through October 2019. In its Response, Blue Ribbon argues *only* that it provided timely, adequate notice for claims associated with work performed in September and October of 2019. *See* Resp. at 2 (Dkt. No. 20). Even after an opportunity to amend to address notice issues, the Complaint offers only a vague legal conclusion to the effect that Blue Ribbon "complied with the statute for notice." Dkt. No. 18 at 3. That bare legal conclusion is insufficient under Rule 12(b)(6). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And given that the parties do not dispute the invoices, and further given there is no allegation or argument whatsoever that there is or could be any other notice provided by Blue Ribbon for these claims apart from that discussed in the Motion and Response, it is appropriate to dismiss the claims in this Rule 12(b)(6) posture.

Moreover, by offering no argument in support of any adequate, timely notice that could possibly have been supplied in connection with claims for work performed in July and August of 2019, Blue Ribbon has effectively abandoned those claims, as Defendants point out in their Reply:

7

> Blue Ribbon now concedes that its notice was untimely as to all labor performed in July and August 2019, making no argument that it complied with the Act as to those months' payments.

Repl. (Dkt. No. 21) at 3 (citing Local Rule CV-7(e)(2)). Finally, adequate notice of claims is a condition precedent to the accrual of a claim under the McGregor Act, and based on the live Complaint and uncontested matters properly before the Court there is no argument that the condition was or could have been satisfied. *See In re Contractor Tech.,* 529 F.3d at 318-20. The July and August 2019 claims must therefore be dismissed.

      C.     *Claim for September 2019 Work.*

Under the Act, Blue Ribbon—a payment-bond beneficiary without a direct contractual relationship with the prime contractor—was required to "mail" a copy of its September 2019 invoices to the prime contractor Flatiron and the sureties by November 15, 2019. *See* Tex. Gov't Code § 2253.047(a), (c). Only entities with a direct contractual relationship with the prime contractor, such as 2J Resources, are permitted an additional month in which to provide a more substantively robust notice of a claim. *See id.* § 2253.041(b).

Blue Ribbon doesn't meaningfully dispute that it failed to timely comply with the notice requirement (either formally or informally) for work performed in September 2019. Instead, Blue Ribbon claims it is entitled to rely on the December 12, 2019 notice *provided by 2J Resources* to Flatiron and one of the bond's sureties, Defendant Liberty Mutual Insurance Company,[2] as a basis to perfect Blue Ribbon's claim for work performed in September 2019. In support, Blue Ribbon urges that as a staffing company, it should be considered 2J Resources' co-employer and therefore also subject to the Act's three-month notice period. Alternatively, Blue Ribbon claims that because

---

[2] *See* Ex. 2 to Amend. Compl. at 51-52.

it paid for 2J Resource's labor force, it is entitled to benefit from 2J Resource's notice under principles of equitable subrogation.

Blue Ribbon's argument is unsupported by the plain text of the statute or any case law cited in its briefing. If accepted, the argument could effectively render superfluous the McGregor Act's differing deadlines for subcontractors in direct privity with the prime from those not in direct privity. Nor is there any convincing support brought to the Court's attention for an "equitable-subrogation" or staffing-company "co-employer" exception to the Act's notice requirement.

In any event, 2J Resources' letter to Flatiron and Defendant Liberty Mutual wouldn't satisfy § 2253.041, which has a longer timeline but requires a more exacting notification than § 2253.047. Specifically, the letter provided as notice (1) isn't a sworn statement of account and (2) doesn't state that the amount claimed is "just and correct."[3] *Compare* Ex. 2 to Amend. Compl. at 51-52 *with* Tex. Gov't Code § 2253.041(c) & (d). Nor does Blue Ribbon meaningfully argue that 2J Resources' letter substantially complied with the Act's notice requirement under § 2253.041. *Cf. Featherlite Bldg. Prod. Corp. v. Constructors Unltd., Inc.*, 714 S.W.2d 68, 69 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). Accordingly, nothing supports Blue Ribbon's efforts to cherry pick the timeline from § 2253.041 and combine it with the more lenient substantive notice requirements of § 2253.047.

In short, 2J Resources' letter can't perfect Blue Ribbon's claim for work performed in September 2019, as a matter of law. Because the deadlines set forth in the McGregor Act are

---

[3] In addition, aside from Liberty, the letter wasn't sent to the remaining defendants—all of whom are sureties on the bond.

strictly enforced,[4] Blue Ribbon's claim to recover on the bond for work performed in September 2019 must also be dismissed.

       D.     *Claim for October 2019 Work.*

There's no dispute that Blue Ribbon didn't send Flatiron notice of its October 2019 claim by certified or registered mail until it was too late; notice was mailed via certified mail on January 9, 2020. *See* Ex. 2 at 77-78 to Amend. Compl. Attached to Blue Ribbon's live complaint, however, are two emails dated November 18, 2019, and December 4, 2019, sent by its president to Flatiron. *See id.* at 4-47. These emails informed Flatiron of Blue Ribbon's October 2019 claim and attached the relevant invoices. Defendants don't dispute that (1) Blue Ribbon timely provided to Flatiron the content of notice required by the Act and (2) Flatiron timely received actual notice of Blue Ribbon's October 2019 claim, albeit by email instead of certified or registered mail.

Because the Act specifies in § 2253.048(a) that "[a] notice required by this subchapter to be mailed must be sent by certified or registered mail," at issue with the claim to recover for October 2019 work is whether Blue Ribbon sufficiently complied with the statute by providing email notice.

       1.     *On This Question of State Law, this Court Makes an Erie Guess.*

The Court finds no Texas Supreme Court decision addressing whether email notice could be sufficient under Texas's McGregor Act. The parties point to hardly any Texas Supreme Court decisions addressing the Act at all. Because the Texas Supreme Court hasn't addressed the issue presented, this Court "must make an 'Erie guess' and 'determine as best it can'" what the Texas Supreme Court would decide. *Howe ex rel. Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 627 (5th

---

[4] *See In re Contractor Tech.,* 529 F.3d at 320 (holding that under Texas law a party cannot substantially comply with Chapter 2253 by failing to satisfy its "timing requirements").

10

Cir. 2000) (quotation marks edited and quoting *Krieser v. Hobbs*, 166 F.3d 736, 738 (5th Cir. 1999), and other authorities); *see also Barfield v. Madison Cnty., Miss.*, 212 F.3d 269, 271-72 (5th Cir. 2000). In this analysis, decisions from Texas's intermediate courts of appeals provide persuasive, but not binding, authority for this Court to consider. *Howe*, 204 F.3d at 627. Put another way, decisions from intermediate Texas appellate courts are "'a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Id.* (quotation marks edited and quoting *Labiche v. Legal Sec. Life Ins. Co.*, 31 F.3d 350, 351 (5th Cir. 1994)).

        2.     *The Statute's Plain Text Controls.*

Defendants advance a straightforward plain-text argument: "The Act is unequivocal that statutory notice must be mailed 'by certified or registered mail.'" Mot. at 8 (quoting Tex. Gov't Code § 2253.048(a)). Because notice of the October 2019 claim was transmitted in a timely fashion only by email, Defendants urge that the claim is unperfected and should be dismissed for failure to comply with the statute's clear and simple directive. *See id.* ("Blue Ribbon's sworn, mailed notice was sent too late, and the emails failed to perfect its claim. The case should be dismissed."). The Court agrees with Defendants, at least insofar as this Court predicts what the Texas Supreme Court would do, even as this Court also follows binding instructions from the Fifth Circuit.

**Precedent, as it applies in this Court, favors Defendants' plain-text position.** As noted, the Court finds no on-point decision from the Texas Supreme Court or any intermediate appellate court in Texas on email notice. The closest decision appears to address whether notice sent by regular first-class mail—instead of registered or certified mail—could suffice. The intermediate appellate court sitting in Fort Worth, the Second Court of Appeals, held that timely notice sent via regular mail (as opposed to registered or certified) is sufficient if it is actually received. *See, e.g.*,

11

*Redland Ins. Co. v. Sw. Stainless, L.P.*, 181 S.W.3d 509, 512 (Tex. App.—Fort Worth 2005, no pet.)).

Beyond *Redland Insurance*, Defendants' plain-text argument is in tension more generally with other decisions from Texas intermediate courts of appeals recognizing that substantial compliance with the statue is apparently all that is required, at least when it comes to the substance of the notice provided. *E.g.*, *United Fire & Cas. Co. v. Boring & Tunneling Co. of Am.*, 321 S.W.3d 24, 28 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (noting, "case law has established that adherence to notification deadlines requires strict compliance, but substantial compliance is adequate for the other notice provisions") (citations, brackets, and quotations omitted). These decisions, like *Redland Insurance*, typically invoke the remedial purpose of the Act, a concomitant need to liberally construe the Act's provisions to favor recovery for subcontractors seeking payment for work or services provided, and the Act's purported goal of providing a simple and direct method of giving notice and thereby perfecting these types of claims. *See, e.g.*, *Redland Ins. Co.*, 181 S.W.3d at 512; *Featherlite*, 714 S.W.2d at 69 ("Because the McGregor Act is remedial in nature, it is to be given the most comprehensive and liberal construction possible." (internal quotation omitted)). These intermediate appellate court decisions, as mentioned, are not binding on this Court and need not dictate the Court's ruling where there is a persuasive reason to depart from their reasoning. *See Barfield*, 212 F.3d at 271-72; *Howe*, 204 F.3d at 627. There is such a reason here.

**The plain-text approach to this statute endorsed by the Fifth Circuit supports Defendants' position.** As this Court *Erie* guesses how the Texas Supreme Court would interpret the provisions at issue, this Court is also guided by the Fifth Circuit's approach to interpreting the McGregor Act. *In re Contractor Technology* made clear that "[a]lthough [a court] may well

12

conclude a different result is more appropriate, when a statue is clear on its face, [the court] must faithfully interpret it." 529 F.3d at 320 (citing *Waggoner v. Gonzales*, 488 F.3d 632, 638 (5th Cir. 2007).[5] Indeed, the opinion made that salient point in the course of interpreting *this very Texas statute*.

In the context of addressing the timing of a notice's delivery, *In re Contractor Technology* held that strict adherence to the timing deadlines for required notice is mandated. 529 F.3d at 318-20. The notice provisions of the Act, the Court stressed, are a substantive condition precedent to the accrual of a cause of action on the bonds. *Id*. Moreover, this bright-line approach, the Court reasoned, is warranted "no matter how liberally we construe Chapter 2253." *Id*. at 319. "Reading the Act by its terms" and enforcing the notice deadlines strictly, the Fifth Circuit explained, "does not necessarily frustrate [the Act's] purposes" of protecting claimant bond beneficiaries and providing a simple, direct method of perfecting claims, or otherwise "create an absurd construction" of the Act. *Id*. at 32; *see also Fid. & Deposit Co. of Md. v. Big Three Welding Equip. Co.*, 249 S.W.2d 183, 185 (Tex. 1952) ("Plaintiffs did not comply with this provision of Art. 5160 in that they did not file their claims in the required manner and therefore are not entitled to recover.").[6]

---

[5] *See also Employers' Liab. Assur. Corp. v. Young Cnty. Lumber Co*., 64 S.W.2d 339, 343 (Tex. 1933) ("The answer is that we are dealing with restrictions and conditions imposed by the very statute which creates the right, and those restrictions and conditions may not be relaxed or modified to avoid what may appear to be too strict or narrow a rule in a particular case. Such departure from the statute in one case would justify similar action in a case somewhat different, and by such course the statute would be modified and even nullified.").

[6] Texas intermediate courts of appeals have likewise adopted a bright-line approach to the timeliness requirements for notice. *See, e.g.*, *United Fire*, 321 S.W.3d at 28 ("As a result, case law has established that adherence to notification deadlines requires strict compliance, but substantial compliance is adequate for the other notice provisions."); *Suretec Ins. Co. v. Myrex Ind.*, 232 S.W.3d 811, 816 (Tex. App.—Beaumont 2007, no pet.) (similar).

Following the Fifth Circuit's lead—as this Court is bound to do—and notwithstanding a number of nonbinding intermediate Texas appellate court decisions taking a less text-based approach to other provisions of the Act, this Court concludes that the Texas Supreme Court would enforce the Act according to the plain meaning of the unambiguous provisions at issue. The Act plainly requires that perfecting a claim necessitates first "mailing" notice and also that such notice "must"—not "may" or "can"—be sent by "certified or registered mail." Tex. Gov't Code § 2253.048(a). Because there is no allegation or argument that notice was timely "mail[ed]" here by "certified or registered mail," the October 2019 claim isn't perfected as a matter of law and must be dismissed.

This plain-text interpretation not only follows the Fifth Circuit's lead on the McGregor Act, it's also consistent with the strict plain-text approach to statutory interpretation currently utilized by the Texas Supreme Court. First, Texas's Code Construction Act instructs that the term, "must" reflects a condition precedent. *See* Tex. Gov't Code Ann. § 311.016(3). Conditions precedent of this nature, under Texas law, are typically mandatory and should be enforced. *See, e.g.*, *Employers' Liab. Assur. Corp. v. Young Cnty. Lumber Co.*, 64 S.W.2d 339, 343 (Tex. 1933) ("The general rule is that where the cause of action and remedy for its enforcement are derived not from the common law but from the statute, the statutory provisions are mandatory and exclusive, and must be complied with in all respects or the action is not maintainable.").

Second, the provisions on mailing notice are clear and unambiguous. A required notice "must be sent by certified or registered mail." Tex. Gov't Code. § 2253.048(a). The statute further mandates that "a notice required by this subchapter to be mailed to the prime contractor must be addressed to the prime contractor at the contractor's residence or last known business address." *Id.*(b). Email notice would violate both these provisions. So would notice by text. Or oral notice.

Or notice by publication. Or a host of other possible methods of providing notice. The statute's language provides no room for these possible alternatives. Yet at the same time, the statute is less exacting on the topic of mailing notice, when notice is mailed to the surety. There, three options are provided to satisfy how notice could be addressed (*i.e.*, addressing notice to the address on the bond or an attachment, an address on file with the Department of Insurance, or any other address permitted by law). Some leniency, therefore, might be expected if a different address were used when mailing notice to the surety. But even notice sent to these different addresses, the statute clarifies, must be sent by certified or registered mail. Email notice, therefore, likely wouldn't satisfy this provision either. In short, email notice could effectively read § 2253.048 out of the statute, which the Texas Supreme Court wouldn't do. *See City of Marshall v. City of Uncertain*, 206 S.W.3d 97, 105 (Tex. 2006*)* ("It is an elementary rule of construction that, when possible to do so, effect must be given to every sentence, clause, and word of a statute so that no part thereof be rendered superfluous.") (quotations omitted).

Third, the statutory text itself provides justification for strictly enforcing the registered-or-certified-mail provision while providing for leniency and permitting substantial compliance with respect to the substance of notice provided. To be clear, this Court does not (and surely could not) undertake to reconcile the body of case law in the Texas intermediate courts of appeals on the McGregor Act's notice provisions. But much of the case law providing for "substantial compliance" with the statute's requirements for the substance of the notice provided has a hook in the statutory text itself: Section 2253.041(c)'s requirement of a sworn statement of account notes that the notice should provide "in substance" that "the amount claimed is just and correct" and that "all just and lawful offsets, payments, and credits known to the affiant have been allowed." Departures in the supplied notice from that precise language, therefore, are expressly authorized

by the statutory text's use of the phrase, "in substance." In contrast, the notice deadlines that are strictly enforced all are preceded by mandatory language in the statute employing the term, "must." That mandatory "must" language is repeated in the requirement for mailing by certified or registered mail. In other words, the statute instructs when something is mandatory and when substantial compliance is good enough.

In reaching its conclusion, the Court recognizes that the United States Supreme Court refused to find a somewhat similar notice requirement in an early version of the *federal* public works statute constituted a condition precedent to suit where the prime contractor actually received written notice of a claim. *See Fleisher Eng'g & Constr. Co. v. U.S., for Use & Benefit of Hallenbeck,* 311 U.S. 15 (1940). To start, the Texas Supreme Court's interpretation of Texas's McGregor Act would not be controlled by the United States Supreme Court's interpretation of related but differently worded provisions of an outdated version of the federal Miller Act. *Compare* 40 U.S.C. 3133(b) (2006) *with Fleisher*, 311 U.S. at 17 n.1 (setting forth Section 2 of the 1935 Miller Act). Even though the Texas Supreme Court's interpretation of a Texas statute can be informed or guided by interpretations of analogous federal statutes, any such consideration would not be sufficient on its own to warrant the Texas Supreme Court's departure from the plain meaning of a Texas statute. *See Tex. Dep't of Protective & Regul. Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 177 (Tex. 2004) ("If the statutory text is unambiguous, a court must adopt the interpretation supported by the statute's plain language unless that interpretation would lead to absurd results."); *see also Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 507 (Tex. 2012) ("The University counters that this Court has only looked to federal law for guidance in circumstances where Title VII and the TCHRA are analogous and that they are no longer analogous after the Ledbetter Act. We agree with the University.").

Further, a comparison of the text of the McGregor Act and the 1935 version of the Miller Act renders *Fleisher* distinguishable. The McGregor Act conditions a payment bond beneficiary's right to recover on it having timely *mailed* notice. The 1935 version of the Miller Act, in contrast, conditioned the bond beneficiary's right to recover "upon *giving* written notice to said contractor." *Fleisher*, 311 U.S. at 18-19 (quoting 40 U.S.C.A. § 270b (1935 version)) (emphasis added). Texas's McGregor Act also separately conditions recovery on notice having been sent by either certified or registered mail, which the Act does by requiring that notice "must" be "mail[ed]" by either of those methods. *See* Tex. Gov't Code §§ 2252.047; 2253.073, 2253.048. The 1935 federal Miller Act, however, merely "provide[d] for the mode of service of the notice." *Fleisher*, 311 U.S. at 19. In other words, the McGregor Act expressly conditions recovery on a notice that is *mailed* (with mailing defined by § 2253.048 as registered or certified mail) while the Miller Act conditioned recovery only on a claimant *giving* notice. Accordingly, the Court's plain-text reading of the McGregor Act doesn't conflict with *Fleisher* and is consistent with fundamental principles of statutory construction.

A final word on statutory purposes and policy. The Fifth Circuit explained in *In re Contractor Technology* that "[r]eading the Act by its terms" and enforcing its plain text "does not necessarily frustrate [the Act's] purposes." 529 F.3d at 32. Further, important policies are advanced by enforcing a bright-line rule here. Although Defendants received actual notice, one wonders what they received actual notice of. They didn't receive actual notice of an indisputably perfected claim under the Act because everyone agrees that the sufficiency of email notice is something new. It is not the role of this Court to revise and expand Texas statutes to keep pace with the times; that is a job best left for the Texas Legislature. *See Howe*, 204 F.3d at 628 ("The role of this court is not 'to create or modify state law, rather only to predict it.'" (quoting *St. Paul Fire & Marine v.*

*Convalescent Servs.*, 193 F.3d 340, 345 (5th Cir.1999))). And notably, the Texas Legislature knows how to include an express provision in a statute to excuse notice requirements when actual notice is received, as demonstrated by the Texas Tort Claims Act. *See, e.g*, Tex. Civ. Prac. & Rem. Code § 101.101(c) ("The notice requirements provided or ratified and approved by Subsections (a) and (b) do not apply if the governmental unit has actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged.").

E. *Attorneys' Fees.* Finally, the Court turns to Defendants' request to dismiss Blue Ribbon's claim for attorneys' fees pursuant to Chapter 38 of the Texas Civil Practice & Remedies Code. This argument need not be addressed at this time because the predicate claims warrant dismissal, and so there could not be any recovery of fees by Blue Ribbon in this case.

## Conclusion

For the reasons discussed above, Defendants' Motion, Dkt. No. 19, is **GRANTED**. Plaintiff Blue Ribbon Staffing LLC's claims to recover on the payment bond for work performed from July through October of 2019 are **DISMISSED** under Rule 12(b)(6).

A separate final judgment shall issue.

**IT IS SO ORDERED**.

SIGNED this 26th day of January, 2021.

RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE